1  ERIC GRANT
   United States Attorney
2  KAREN A. ESCOBAR
   Assistant United States Attorney
3  2500 Tulare Street, Suite 4401
   Fresno, CA 93721
4  Telephone: (559) 497-4000
   Facsimile:  (559) 497-4099
5

6  Attorneys for Plaintiff
   United States of America
7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,            CASE NO.  1:24-CR-00054-JLT-BAM

    Plaintiff,                           PLEA AGREEMENT
12

13  v.                                   DATE: TBD
                                         TIME: TBD
14  NATASHA MICHELLE BAILEY,             COURT: Hon. Jennifer L. Thurston

    Defendant.
15

16

17                  I.    **INTRODUCTION**

18      A.    <u>Scope of Agreement</u>

19          The indictment in this case charges the defendant with a violation of 21 U.S.C. §§ 846,

20  841(a)(1), and 841(b)(1)(B)– Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl

21  (Count One); and 21 U.S.C. § 841(a)(1) – Distribution of Fentanyl (Count Six).  This document contains

    the complete plea agreement between the United States Attorney's Office for the Eastern District of
22
    California (the "government") and the defendant regarding this case.  This plea agreement is limited to
23
    the United States Attorney's Office for the Eastern District of California and cannot bind any other
24
    federal, state, or local prosecuting, administrative, or regulatory authorities.
25
        B.    <u>Court Not a Party</u>
26
            The Court is not a party to this plea agreement.  Sentencing is a matter solely within the
27
    discretion of the Court, and the Court may take into consideration any and all facts and circumstances
28

concerning the criminal activities of defendant, including activities that may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II.    DEFENDANT'S OBLIGATIONS

### A.    Guilty Plea

The defendant will plead guilty to Count One of the indictment, charging a violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) – Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl. The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw her plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.    Sentencing Recommendation

The defendant and her counsel may recommend whatever sentence they deem appropriate.

### C.    Defendant's Violation of Plea Agreement or Withdrawal of Plea

If the defendant, violates this plea agreement in any way, withdraws her plea, or tries to

1  withdraw her plea, this plea agreement is voidable at the option of the government. The government

2  will no longer be bound by its representations to the defendant concerning the limits on criminal

3  prosecution and sentencing as set forth herein. One way a defendant violates the plea agreement is to

4  commit any crime or provide any statement or testimony which proves to be knowingly false,

5  misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of

6  justice will also be a violation of the agreement. The determination whether the defendant has violated

7  the plea agreement shall be decided under a probable cause standard.

8        If the defendant violates the plea agreement, withdraws her plea, or tries to withdraw her plea,

9  the government shall have the right: (1) to prosecute the defendant on any of the counts to which she

10  pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3)

11  to file any new charges that would otherwise be barred by this plea agreement. The defendant shall

12  thereafter be subject to prosecution for any federal criminal violation of which the government has

13  knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or

14  all of these options is solely in the discretion of the United States Attorney's Office.

15        By signing this plea agreement, the defendant agrees to waive any objections, motions, and

16  defenses that the defendant might have to the government's decision to exercise the options stated in the

17  previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as

18  of the date of this plea agreement may be commenced in accordance with this paragraph,

19  notwithstanding the expiration of the statute of limitations between the signing of this plea agreement

20  and the commencement of any such prosecutions. The defendant agrees not to raise any objections

21  based on the passage of time with respect to such counts including, but not limited to, any statutes of

22  limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

23  Amendment to any counts that were not time-barred as of the date of this plea agreement.

24        In addition: (1) all statements made by the defendant to the government or other designated law

25  enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,

26  whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or

27  administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

28  claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal

1  Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by

2  the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.

3  By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### III.    THE GOVERNMENT'S OBLIGATIONS

#### A.    Dismissals

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment, as to this defendant.  The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in II.C (Defendant's Violation of Plea Agreement), VI.B (Guidelines Calculations), and VII.B (Waiver of Appeal) herein.

#### B.    Recommendations

##### 1.    Incarceration Range

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for her offense, including the application of the mandatory statutory minimum term, as determined by the Court. The government will further recommend a four-level mitigating role reduction based on her relative culpability in relation to the lead defendant, Kristopher Thomas.  The government also agrees to a two-level reduction pursuant to the safety valve provision and zero point offender guideline, if she qualifies for both of these reductions.

##### 2.    Other Aspects of Sentencing

The government may recommend whatever it deems appropriate as to all other aspects of sentencing.

##### 3.    Acceptance of Responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if she clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the

preparation of the pre-sentence report or during the sentencing proceeding.

### C.    Use of Information for Sentencing

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.    ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty:

As to Count One, charging a violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B) – Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl:

1.    First, beginning on or about May 1, 2022, and continuing through on or about December 29, 2022, there was an agreement between two or more persons to distribute and possess with intent to distribute fentanyl; and

2.    Second, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

The government is also required to show beyond a reasonable doubt that the conspiracy involved 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a schedule II controlled substance, reasonably attributable to the defendant.

The defendant fully understands the nature and elements of the crimes charged in the indictment to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

## V.    MAXIMUM SENTENCE

### A.    Maximum Penalty

The sentence that the Court can impose with respect to the fentanyl conspiracy is a five-year

mandatory minimum sentence, absent a motion by the government for reduction pursuant to 18 U.S.C. § 3553(e), and a maximum term of 40 years in prison, a fine of $5 million, a term of supervised release of at least 4 years and up to life, and a special assessment of $100.

In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.

**B.    Violations of Supervised Release**

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 5 years of additional imprisonment.

## VI.    SENTENCING DETERMINATION

**A.    Statutory Authority**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.    Guideline Calculations**

The defendant is free to recommend to the Court whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a). The government is free to argue under § 3553(a) in support of its sentencing recommendation detailed above.

## VII.    WAIVERS

**A.    Waiver of Constitutional Rights**

The defendant understands that by pleading guilty she is waiving the following constitutional

rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on her behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.    Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence. The defendant agrees as part of her plea/pleas, however, to give up the right to appeal any aspect of the guilty plea, conviction, or the sentence imposed in this case. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence imposed in this case, except for non-waivable claims.

Notwithstanding the agreement in paragraph III.A (Dismissals) above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate her plea, dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in paragraph II.E (Defendant's Violation of Plea Agreement) herein.

## VIII.    ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.    APPROVALS AND SIGNATURES

### A.    Defense Counsel

I have read this plea agreement and have discussed it fully with my client.  The plea agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated:  ___8/18/25___                    _____
                                                          ALEXXIA TORRES STALLINGS
                                                          Counsel for Defendant

### B.    Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case.  No other promises or inducements have been made to me, other than those contained in this plea agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.  Finally, I am satisfied with the representation of my attorney in this case.

Dated:  ___8/23/28___                    _____
                                                          NATASHA MICHELLE BAILEY,
                                                          Defendant

### C.    Attorney for the United States

I accept and agree to this plea agreement on behalf of the government.

1     Dated:                                          ERIC GRANT
                                                      United States Attorney
2

3                                              By:    _____
                                                      KAREN A. ESCOBAR
4                                                     Assistant United States Attorney

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT A

### Factual Basis for Plea

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

The evidence shows that on September 8, 2022, toll records for the defendant's phone number ending in -8393 ("defendant's number") indicate that at 8:37 a.m. co-defendant Derrick D. Charles, an inmate at Kern Valley State Prison who is also serving a murder sentence, called the defendant.

Toll records for the defendant's number indicate that at 10:34 a.m. she texted Charles.

From September 8, 2022, at 8:37 a.m. to 10:25 a.m. on September 9, 2022, toll records for the defendant's number indicate that there were approximately 445 contacts between Charles and the defendant. 118 of those contacts consist of text messages.

On September 8, 2022, at 7:55 p.m., Thomas, using one of his contraband cell phones, made an outgoing call to co-defendant Justin Damonte Mitchell at Mitchell's phone number ending in -9474. During this call, Thomas told Mitchell that he needed Mitchell to go to the same place he had gone to "last time." Mitchell asked Thomas if he meant Bakersfield and Thomas confirmed. Thomas told Mitchell to start heading toward Bakersfield to "drop it off." Ensuing wire intercepts indicated that Thomas was coordinating the smuggling of fentanyl into Kern Valley State Prison for Charles.

At 9:15 p.m., Thomas received a text message on his contraband cell phone from a telephone number believed to be used by Thomas's cellmate. The text message contained an address on Q Street in Bakersfield, California. At 9:19 p.m., Thomas sent the same address via text message to the defendant followed by, "Thts where ur gonna take it to."

At 9:49 p.m., Thomas made an outgoing call on his contraband cell phone to an associate. During the call, Thomas and the associate discussed the process of wrapping a narcotics package in electrical tape and Saran wrap before a female uses her vagina to smuggle the package to an inmate inside a prison.

At 10:25 p.m., Thomas, using his contraband phone, received a text message from his cellmate's contraband phone. The text message contained the following address: 5037 E Brundage Lane, Bakersfield, CA, which is the address for a Neighborhood Walmart store. At the same time, Thomas sent the same address to Mitchell. At 10:28 p.m., Thomas sent a picture message to his cellmate, which appeared to depict two small packages wrapped in black electrical tape on a table. At 10:37 a.m., Thomas sent the defendant a text asking, "whts yo eta?" Mitchell replied with the text messages "2hr 30" and "1am."

At 10:41 p.m., Thomas, using his contraband cell phone, sent a text message to co-defendant Charles stating, "Ima send u his number so if I'm sleep u can call him." At 10:42 p.m., Thomas, using his contraband phone, made an outgoing phone call to Charles. During this call, Thomas asked Charles if he was going to be awake. Charles said that he "didn't have a choice." Thomas indicated to Charles that he had given "him," referring to the defendant, his number to call once he gets out there, referring to Bakersfield. Thomas told Charles that he, referring to Mitchell, had 2 bundles and 2,000.

At 10:46 p.m., Thomas's cell mate sent a text message to Thomas, using the contraband phone, which stated, "75 gs in each 1."

At 10:57 p.m., toll records show Mitchell called Charles.

At 11:05 p.m., Charles called the defendant on the defendant's phone.

At 11:30 p.m., DEA agents and officers established surveillance at the Neighborhood Walmart at 5037 E. Brundage Lane, Bakersfield, California.

On September 9, 2022, at 12:48 a.m., Thomas, using his contraband phone, sent a text message to Mitchell asking, "How far out are u?" At 12:49 p.m., Mitchell sent a text message to Thomas stating, "20 minutes."

At 1:10 a.m., a DEA agent saw Mitchell drive into the parking lot of the Neighborhood Walmart.

At 1:12 a.m., Thomas, using his contraband phone, received a text message from Mitchell stating, "I'm here." Thomas then sent a text message to co-defendant Charles stating, "He's there." At 1:13 a.m., Thomas sent a text message to Mitchell stating, "Call him."

Toll records show that at 1:13 a.m., Mitchell called Charles and then three minutes later Charles called the defendant.

At 1:19 a.m., a DEA agent saw a white Chevrolet sedan enter the parking lot of the Neighborhood Walmart and proceed to park in the stall directly east of where Mitchell was parked. Mitchell met with the driver of the white Chevrolet and, shortly thereafter, both vehicles exited the parking lot.

Toll records show at 1:17 a.m., Charles called Mitchell. Approximately five minutes later, at 1:22 a.m., Charles again called the defendant.

At 1:31 a.m., Thomas, using his contraband phone, received a text message from Mitchell stating, "I did she got everything." Thomas replied, "Good looking."

At 12:53 p.m., an officer of the Kern Valley State Prison spotted a white Chevrolet sedan with the same license plate as the vehicle that met with Mitchell at the Neighborhood Walmart. The officer determined that the driver of the white Chevrolet was the defendant, who presented her identification to prison security to visit Charles. Once the defendant's visit with Charles concluded, she returned to the white Chevrolet and left the premises.

At 2:00 p.m., officers searched Charles' prison cell and found and seized two packages that were wrapped in black electrical tape. The packages were located under the lower-bunk mattress that was assigned to Charles at the time of the seizure. The packages were consistent in appearance to the packages depicted in the photo that Thomas had texted his associate. A DEA chemist found that the seized packages contained 255.4 grams (net) of fentanyl, a Schedule II controlled substance.

I, NATASHA MICHELLE BAILEY, have read the Factual Basis for Plea and agree to the facts and stipulations contained therein.

Dated: _____8/23/25_____          _Natasha M Bailey_
                                   NATASHA MICHELLE BAILEY,
                                   Defendant